FILED 08 JUL '11 11:45 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GREGORY ANDERSON,                                      CV. 10-6377-MO

               Petitioner,

     v.                                              OPINION AND ORDER

JEFFERY THOMAS,

               Respondent.


     STEPHEN R. SADY
     Office of the Federal Public Defender
     101 SW main Street, Suite 1700
     Portland, OR  97204

         Attorney for Petitioner


     DWIGHT C. HOLTON
     United States Attorney
     RONALD K. SILVER
     Assistant United States Attorney
     1000 SW Third Avenue, Suite 600
     Portland, OR  97204-2902

         Attorneys for Respondent


1 - OPINION AND ORDER

Mosman, District Judge.

Petitioner, an inmate at the Satellite Camp Prison ("SCP"), Sheridan, Oregon at the time of filing, brings this habeas corpus action pursuant to 28 U.S.C. § 2241. He alleges he was wrongfully denied credit for 8 1/2 months participation in the Residential Drug Abuse Treatment Program ("RDAP") after disciplinary action was reversed and expunged; he was wrongfully required to repeat RDAP or be designated withdrawn/fail despite disciplinary action being reversed and expunged; and his early release incentive eligibility was wrongfully rescinded. (#1, at 3.) Petitioner asks the Court to require the BOP to (1) immediately credit him for completion of RDAP as of April 30, 2010; (2) restore early release eligibility; (3) credit him for days of imprisonment beyond the early release date toward community corrections time; (4) immediately release him; (5) correct all records to reflect he completed RDAP; and (6) reimburse him for unpaid incentive/job substitution pay of $40. (*Id.* at 29.) Because this Court lacks jurisdiction to review individualized RDAP determinations, and Petitioner has not otherwise shown protected rights were violated, the Petition for Writ of Habeas Corpus (#1) is DENIED.

## BACKGROUND

I.    Statutory Background.

In 18 U.S.C. §§ 3621-3625, Congress vested the BOP with broad authority to manage the imprisonment of a convicted person, and specified "[t]he Bureau shall make available appropriate substance

2 - OPINION AND ORDER

abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Congress articulated a specific statutory mandate for residential substance abuse treatment programs for "eligible prisoners," defined as one who is "(i) determined by the Bureau of Prisons to have a substance abuse problem, and (ii) willing to participate in a residential substance abuse treatment program[.]" 18 U.S.C. § 3621(e)(5)(B).[1]    In § 3625 Congress specified that the provisions for judicial review under §§ 701-706 of the Administrative Procedures Act ("APA") "do not apply to the making of any determinations, decision, or order" under § 3621.[2]

In 1994, Congress enacted the Violent Crime Control Law Enforcement Act of 1994 ("VCCLEA"), which amended 18 U.S.C. § 3621 to include an early release incentive for inmates convicted of non-violent offenses who successfully complete RDAP.    18 U.S.C. § 3621(e)(2).    The early release incentive is awarded at the discretion of the BOP.[3]

─────────────────────

[1]The program the BOP created to satisfy this mandate is the Residential Drug Abuse Program ("RDAP").

[2]Section 3625 specifies:
Inapplicability of the Administrative Procedures Act
The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter.

[3]Section 3621(e)(2)specifies in relevant part:
(A)  Generally.  Any prisoner who, in the judgment of the Director of the [BOP], has successfully completed a program of residential substance abuse treatment provided under

The BOP's implementing regulations for drug treatment programs are found at 28 C.F.R. §§ 550.50-550.57 (2009), with §§ 550.53-550.55 specific to RDAP.  Section 550.53(g) addresses expulsion from RDAP.[4]  Section 550.57 addresses inmate appeals.[5]

The BOP's internal agency guidelines for the various drug abuse programs are found in Chapter Two (2) of Program Statement P5330.11 (3/16/2009).  Section 2.5 is specific to RDAP.[6]

---

paragraph (1) of this subsection, shall remain in the custody of the [BOP] under such conditions as the Bureau deems appropriate.
(B) Period of Custody.  The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve."

[4]28 C.F.R. § 550.53(g). *Expulsion from RDAP.*
(1) Inmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment.

(2) Ordinarily, inmates must be given at least one formal warning before removal from RDAP.  A formal warning is not necessary when the documented lack of compliance with program standards is of such magnitude that an inmate's continued presence would create an immediate and ongoing problem for staff and other inmates.

* * *

[5]28 C.F.R. § 550.57.  Inmate Appeals.
Inmates may seek formal review of complaints regarding the operation of the drug abuse treatment program by using administrative remedy procedures in 28 CFR part 542.

[6]P5330.11 Section 2.5 reads in relevant part:
2.5.12. Program Outcomes.
How an inmate leaves a RDAP is based on the inmate's

II.  Background of the case.

On March 19, 2009, Petitioner was sentenced to thirty (30) months imprisonment and five years supervised release following his conviction for Possess with Intent to Distribute 5 grams or More of Cocain Base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii).  (#1, Ex. 1 at 1-3.)  Petitioner was admitted to the RDAP program at SCP Sheridan on July 20, 2009.  (#15, Decl. at 2.)  He received an incident report on March 23, 2010, alleging he

> behavior.
> * * *
> (c) Withdrawal/Incomplete.
> * * *
> (d) Intervention and § 550.53(g). *Expulsion from RDAP.*
> * * *
>      (a) Circumstances for an Intervention.
> Ordinarily, staff will provide the inmate with at least
> one treatment intervention prior to removal. However,
> in response to disruptive behavior or unsatisfactory
> progress, treatment staff will:
> - Meet with the inmate to discuss his or her behavior
> or lack of progress.
> - Assign the treatment intervention(s) chosen to reduce
> or eliminate the behavior, or to improve progress.
> - Warn the inmate of the consequences of failure to
> alter his/her behavior.
> - Properly document in PDS the meeting and treatment
> intervention(s) assigned.
> - Properly document in PDS changes to the inmate's
> treatment plan, and ensure that both staff and the
> inmate sign the amended treatment plan.
> - When appropriate, require the inmate to discuss his
> or her targeted behavior in the community.
>      (b) Circumstances for Expulsion.
> In the event repeated treatment interventions are
> required in response to inappropriate behaviors or
> unsatisfactory progress the treatment team will meet to
> decide if the inmate will be removed from the program.

committed the prohibited act of "planning the introduction of non-hazardous contraband (music compact disc), and conduct which disrupts most like use of the telephone for abuses," both 300 level violations. (#1, Ex. 9.) Following a hearing on April 9, 2010, the Disciplinary Hearing Officer (DHO) found Petitioner committed the prohibited acts when Petitioner asked a friend to procure a music cd and donate it to the SCP chapel, and used the inmate e-mail system to coordinate the effort. (#1, Ex. 10.) Petitioner was sanctioned "45 Days Loss of Commissary Privileges - Suspended Pending 180 Days of Clear Conduct" and "90 Days Loss of E-mail Privileges - Suspended Pending 180 Days of Clear Conduct." (Id. at 4.) It also appears Petitioner was transferred to the Special Housing Unit ("SHU") for a period of time.[7] (#15, Attach. 2 at 1; #24, at 2.)

On April 14, 2010, Petitioner met with the Drug Abuse Program Coordinator, Neil Solomon, PhD. (#15, Attach. 2 at 1.) Petitioner was told "until staff teams with him next Tuesday," he was on authorized absence from treatment, and a decision would be made regarding his RDAP future at the meeting. (Id.) On April 20, 2010, Petitioner met with the staff team to discuss his rule violations. The team then excused Petitioner and discussed his conduct and response to the meeting. (Id.) Staff did not feel Petitioner took

---

[7]It is not clear from the record whether the transfer to SHU was related to Petitioner arranging for the cd donation, or for some other act. (#15, Attach. 2 at 1.)

6 - OPINION AND ORDER

responsibility for his behavior that led to the violations, and were inclined to expel him from RDAP. (*Id.*) Dr. Solomon suggested he meet with Petitioner alone the following day given Petitioner's anxiety level in the team meeting. (*Id.*) In the meeting on April 21, 2010, Dr. Solomon found Petitioner did not take responsibility for his actions to the degree expected of inmates who are approaching the end of the RDAP program and informed Petitioner he was being expelled from RDAP. (*Id.* at 3.) Petitioner was advised the administrative remedy process was available to him. (*Id.*)

On May 6, 2010, Dr. Solomon consulted with the Regional Drug Abuse Program Coordinator, Dr. R. Rhodes regarding the expulsion. (*Id.* at 4.) Dr. Rhodes did not support the expulsion because a modified treatment plan had not been put in place first. Dr. Rhodes suggested Petitioner be given the opportunity to start RDAP anew with a modified treatment plan. (*Id.*) The same day, Dr. Solomon informed Petitioner his status was once again "RDAP participate" and discussed the modified plan with Petitioner. (*Id.*) Petitioner was given a few days to consider the plan and conditions. (*Id.*) The next day, May 7th, Petitioner informed Dr. Solomon anything short of rejoining his group was unacceptable. Petitioner was informed a failure to accept the modified plan, including starting RDAP anew, would result in a designation "RDAP Fail/Withdraw," and he was again given a few days to consider his options. (*Id.* at 5.) On May 10, 2010, Petitioner informed Dr.

Solomon he would not accept anything short of rejoining his group.
(*Id.* at 6.)

Petitioner pursued administrative remedies to challenge both
the conduct violations and the expulsion from RDAP. (#1, Exs. 3,
4, 14 and 15.) In an August 14, 2010, appeal to the central office
regarding the RDAP expulsion, Petitioner asked that his records be
changed to reflect completion of the program. (#1, Ex. 15.) On
August 19, 2010, in response to Petitioner's challenge to the
conduct violations, the Regional Director ordered staff to conduct
a rehearing. (#1, Ex. 14 at 3.) A January 12, 2011, report of
Petitioner's disciplinary record shows no disciplinary actions on
record. (#15, Attach. 3.)

On January 6, 2011, Dr. Solomon offered Petitioner the option
of resuming the final phase of his RDAP treatment on January 9,
2011, with a projected completion date of January 31, 2011. (#15,
Attach. 2 at 7.) Petitioner was asked to respond before the
January 9, 2011, start date. As of January 12, 2011, Petitioner
had not responded. (*Id.* at 8.) A January 12, 2011, report of
Petitioner's drug program status shows he was designated DAP Fail-
Expel on April 21, 2010, DAP Participate on May 6, 2010, and DAP
Fail-Withdraw as of May 10, 2010. (#15, Attach. 1.)

## DISCUSSION

In his pro se petition, Petitioner alleged he was wrongfully
denied credit for 8 1/2 months participation in the Residential
Drug Abuse Treatment Program ("RDAP") after disciplinary action was

8 - OPINION AND ORDER

reversed and expunged; he was wrongfully required to repeat RDAP or be designated withdrawn/fail despite disciplinary action being reversed and expunged; and his early release incentive eligibility was wrongfully rescinded. (#1, at 3.) He asked that the Court order the BOP to (1) immediately credit him for completion of RDAP as of April 30, 2010; (2) restore early release eligibility; (3) credit him for days of imprisonment beyond the early release date toward community corrections time; (4) immediately release him; (5) correct all records to reflect he completed RDAP; and (6) reimburse him for unpaid incentive/job substitution pay of $40. (*Id.* at 29.)

I.  Jurisdiction

As a threshold matter, the Court must determine whether it has jurisdiction to consider the claims Petitioner set forth in his petition. *See Wallace v. Christiansen*, 802 F.2d 1539, 1542 (9th Cir. 1986) (jurisdiction must be addressed and answered before the merits may be reached). To the extent Petitioner is challenging individualized determinations related to RDAP, including his expulsion - reinstatement - withdrawal/fail designations, the Court lacks jurisdiction to consider the claims. *Reeb v. Thomas*, 636 F.3d 1224, 1227-28 (9th Cir. 2011).

To the extent Petitioner asserts a due process claim challenging the BOP's administrative remedy process and response to his grievances, he fails to state a claim upon which relief may be granted. Under 28 U.S.C. § 2241(c)(3), habeas relief is available only if an inmate "is in custody in violation of the Constitution

or laws or treaties of the United States." BOP regulations give inmates the right to "seek formal review of complaints regarding the operation of the drug abuse treatment program by using the administrative remedy procedures in 28 C.F.R. part 542." 28 C.F.R. § 550.57.[8] Petitioner does not allege he was denied his right to seek formal review, and the record shows Petitioner fully exhausted his right to formal review when he presented his complaints regarding the conduct violations and expulsion from RDAP to every level of the BOP's administrative remedy program. The fact Petitioner's grievances were not resolved to his satisfaction does not constitute a violation of federal law.[9] Therefore, Petitioner is not entitled to relief.

## II. Retaliation Claim

With the assistance of counsel, in the supporting memorandum Petitioner asserts: "the question before the Court is whether the BOP's refusal to timely and fully remedy the wrongful disciplinary action and resulting expulsion from RDAP violated due process protections against arbitrary prejudicial agency action and against

---

[8]28 C.F.R. part 542 details the procedures for four levels of review: informal resolution; initial filing at the institution; appeal to the Regional Office; and final appeal to the Central Office.

[9]The Court notes that approximately 4 1/2 months after filing an administrative remedy appeal to the Central Office, and approximately 7 weeks after filing the instant petition, Petitioner was offered the opportunity to resume the final phase of RDAP, with a projected completion date of January 31, 2011. (#1, Ex. 15; #15, Attach.2 at 7.)

retaliation against [Petitioner] for his lawful pursuit of claims that turned out to be correct." (#24, at 3.) Counsel argues Petitioner has a viable claim of First Amendment retaliation, and urges the Court to find the BOP actions violated Petitioner's First Amendment rights "as a predicate for a potential motion under 18 U.S.C. §3583(e)."[10] (#24, 3-12; 14.)

A petitioner must set forth his claims for relief in his petition. *See* Rules Governing Proceedings in the United States District Courts - Habeas Corpus Rule 1(b) and 2(c). In general, a prisoner's *pro se* complaint is held to a less stringent standard than one drafted by lawyers and is liberally construed by the court. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). The Court finds that even a liberal interpretation of the *pro se* petition does not reveal Petitioner was claiming retaliation as a result of his using the administrative remedy process.

While Petitioner contends in section "C" of the petition, titled "Fear of Retaliation", that the Sheridan camp and RDAP program "are currently managed through fear and intimidation[,]"(#1, at 6), under section "B," titled "Summary of Claim", the petition specifies: "Petitioner seeks redress from his invalid RDAP expulsion, his felonious 'withdrawn' status, and the

---

[10] 18 U.S.C. §3583 governs imposition of supervised release after imprisonment; subsection (e) provides for the modification of the conditions or terms of supervised release by the sentencing court.

rescission of his § 3621(e) sentence reduction."    (#1, at 3.)

Under section "K" of the petition, titled "Legal Argument,"

Petitioner specified: "[t]he question is whether the law, the APA,

and/or policy protects prisoners from arbitrary and capricious

actions, or enables the BOP to lord abusive discretion over

prisoners."    (#1, at 16.)    Throughout the petition Petitioner

reiterates his assertions that the BOP's acts were arbitrary and

capricious, and an abuse of discretion (#1, at 2, 4, 5, 16, 17,

18.)    The Court thus finds that the First Amendment retaliation

claim argued in the counseled brief was not set forth in the

petition and is not properly before the Court.    Therefore, the

retaliation claim will not be considered.

### CONCLUSION

Based on the foregoing, Petitioner's Petition for Writ of

Habeas Corpus (#1) is DENIED.

IT IS SO ORDERED.

DATED this __7__ day of July, 2011.

_____

Michael W. Mosman

United States District Judge

12 - OPINION AND ORDER